*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PUPPY'S CUBBY,

Petitioner-Appellant,

v

CITY OF FARMINGTON HILLS,

Respondent-Appellee.

UNPUBLISHED
September 12, 2019

No. 347757
Tax Tribunal
LC No. 18-001730-TT

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In this action challenging the uncapping of property taxes following the transfer of real property, petitioner Puppy's Cubby appeals as of right the Michigan Tax Tribunal's conclusion that petitioner was not entitled to exemption from uncapping under MCL 211.27a(7)(m). We affirm.

## I. BACKGROUND

Oleg and Elizabeth Shvartsman purchased real property at 33872 York Ridge, Farmington Hills in 2007, owning the property as tenants by the entirety. From 2013 through 2017, the Shvartsmans rented out the property for a profit. Then, on March 31, 2017, the Shvartsmans conveyed title to the subject property via quitclaim deed to petitioner—a limited liability company owned solely by Oleg.[1]

In 2018, respondent's assessor's office notified petitioner that it was "uncapping" the taxable value of the subject property because of the 2017 transfer of ownership. Petitioner appealed the assessor's decision to respondent's Board of Review, which declined to overturn the decision. Petitioner then filed the instant case in the tribunal, arguing that respondent was

---

[1] Given that the Shvartsmans share a surname, we will use first names in this opinion where doing so aids readability.

precluded from uncapping the property's taxable value under MCL 211.27a(7)(m), which exempts transfers of real property among "commonly controlled" "legal entities" from uncapping.

The case was initially assigned to Judge Abood, who held that the Shvartsmans were a partnership under the Uniform Partnership Act (UPA), MCL 449.1 *et seq.*, and that therefore, the couple qualified as a "legal entity" under MCL 211.27a(7)(m). According to Judge Abood, Oleg's continued interest in both the Shvartsmans' partnership and petitioner meant that both entities were commonly controlled. Therefore, Judge Abood concluded that MCL 211.27a(7)(m) applied to the transfer and that the transfer was exempt from uncapping.

Respondent then moved the tribunal to reconsider Judge Abood's decision. The motion was assigned to Judge Marmon, who granted respondent's motion for reconsideration, concluding that the Shvartsmans could not legally be considered a partnership under the UPA, because their rights as tenants by the entirety were controlled by MCL 557.71. Therefore, Judge Marmon held that the transfer of the subject property was not between two "legal entities," and thus, did not fall under MCL 211.27a(m)(7). Petitioner then moved the tribunal to reconsider Judge Marmon's order. This appeal followed the tribunal's denial of petitioner's motion for reconsideration.

## II. ANALYSIS

"This Court's ability to review decisions of the Tax Tribunal is very limited." *President Inn Properties, LLC v Grand Rapids*, 291 Mich App 625, 630; 806 NW2d 342 (2011). In the absence of an allegation of fraud, our review is limited to determining whether the tribunal made an error of law or adopted a wrong legal principle. *Id*. at 631. This Court accepts "the tribunal's factual findings as final, provided they are supported by competent material and substantial evidence. Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Id*. at 642 (internal citation and quotation marks omitted). We review de novo the tribunal's legal conclusions, including its interpretation of statutory provisions. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010).

"Under the GPTA [General Property Tax Act], all real property not expressly exempted is subject to taxation." *Breakey v Dep't of Treasury*, 324 Mich App 515, 520; 922 NW2d 397 (2018), citing MCL 211.1. "Pursuant to the Michigan Constitution and the GPTA, property may not be assessed at more than 50 percent of its 'true cash value,' or fair market value." *Lyle Schmidt Farms, LLC v Mendon Twp*, 315 Mich App 824, 830; 891 NW2d 43 (2016) (internal citation and block notation omitted). "Additionally, Article 9, § 3 of Michigan's 1963 Constitution limits annual increases in property valuation for taxation purposes until ownership of the property is transferred." *Id*. at 830-831 (internal citation, brackets, block notation, and quotation marks omitted). In that regard, "[g]enerally, a property's taxable value is determined by the lesser of (1) the property's current state equalized value or (2) the property's taxable value in the previous year, minus losses, multiplied by 1.05 or the inflation rate, plus all additions." *TRJ & E Props v Lansing*, 323 Mich App 664, 670; 919 NW2d 795 (2018), citing MCL 211.27a(2).

"Under certain circumstances, the taxable value of property may be reassessed according to the following year's state equalized value upon the sale or transfer of the property." *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 693; 840 NW2d 168 (2013). Stated differently, "[t]he Michigan Constitution and Michigan statutory law permit the taxable value of real property to be reassessed upon the sale or transfer of the property at the state equalized value for the calendar year following the assessment." *Sebastian J Mancuso Family Trust v Charlevoix*, 300 Mich App 1, 5; 831 NW2d 907 (2013). "Accordingly, once the property is transferred, its taxable value is no longer predicated on the previous year's taxable value; rather, it is 'uncapped.' " *Mich Props LLC v Meridian Twp*, 491 Mich 518, 531; 817 NW2d 548 (2012).

By statutory definition, a "transfer of ownership" occurs via "conveyance of title to or present interest in property" by "a conveyance by deed." MCL 211.27a(6)(a). The parties in this case do not dispute that the conveyance of the subject property from the Shvartsmans to petitioner by quitclaim deed fell under MCL 211.27a(6)(a). "However, there are several exceptions under which a transfer of ownership will not uncap the property's taxable value." *TRJ & E Props*, 323 Mich App at 671. Specifically, "MCL 211.27a(7) enumerates certain types of conveyances that are excepted from this definition and do not give rise to uncapping." *Detroit Lions*, 302 Mich App at 694 (internal citation and quotation marks omitted).

In the present case, petitioner argues that only one exception applies to the transfer of the subject property—MCL 211.27a(7)(m). Under this exception, the uncapping provisions do not apply to a "transfer of real property or other ownership interests among corporations, partnerships, limited liability companies, limited liability partnerships, or other legal entities if the entities involved are commonly controlled." MCL 211.27a(7)(m). In other words, MCL 211.27a(7)(m) exempts a transfer from uncapping "if (1) the transaction is between legal entities and (2) the legal entities involved are commonly controlled." *Sebastian J Mancuso Family Trust*, 300 Mich App at 6-7.[2]

### A. COMMONLY CONTROLLED

Petitioner and respondent disagree on both elements of MCL 211.27a(7)(m). We conclude that, even assuming that the Shvartsmans qualified as a legal entity under the statute, the transfer was not between "commonly controlled" entities. Therefore, we agree with the tribunal that MCL 211.27a(7)(m) does not apply to the transfer of the subject property and affirm respondent's uncapping of the property taxes.

As this Court has previously noted, "MCL 211.27a does not define 'commonly controlled.' " *Sebastian J Mancuso Family Trust*, 300 Mich App at 7. Nonetheless, the GPTA does define "under common control with" as it relates to personal property taxation exemptions. MCL 211.9o(8)(b). In the absence of a more-specific definition, this Court has relied on the

---

[2] As this Court observed in *TRJ & E Props*, 323 Mich App at 671 n 2, before the statute was amended in 2015, "the common-control exception was located at MCL 211.21a(7)(*l*), but the statutory language has not changed. See 2015 PA 243 (adding Subdivision (d) and relettering the subsequent subdivisions)."

definition provided by MCL 211.9o(8)(b) for guidance when analyzing control for the purposes of MCL 211.27a. *TRJ & E Props*, 323 Mich App at 672-673.[3] In particular, this Court has keyed in on the first sentence of MCL 211.9o(8)(b), which provides the following:

> "Control", "controlled by", and "under common control with" mean the possession of the power to direct or cause the direction of the management and policies of a related entity, directly or indirectly, whether derived from a management position, official office, or corporate office held by an individual; by an ownership interest, beneficial interest, or equitable interest; or by contractual agreement or other similar arrangement.

This statutory definition "recognizes that different percentages of control may be necessary to direct the management of different corporate entities." *TRJ & E Props*, 323 Mich App at 673. For example, "if an entity requires a supermajority to undertake any action, a mere majority of common shareholders would not be sufficient to constitute common control of the entities under this definition." *Id*. The focus is "on the actual control of the business on the basis of its corporate structure." *Id*.

In the instant case, it was undisputed that petitioner was the recipient of the quitclaim deed to the subject property and that Oleg was the sole owner of petitioner. Thus, under any definition, Oleg controlled petitioner. Therefore, in order for the two "entities" at issue to be "commonly controlled," Oleg must have also controlled the property before the transfer of ownership to petitioner. Consequently, we must determine whether Oleg, either directly or indirectly, had the power to direct or cause the direction of the management and policies of the entity that owned the subject property before the transfer. *TRJ & E Props*, 323 Mich App at 672-673; MCL 211.9o(8)(b).

It is undisputed that the entity that owned the subject property before the transfer was the Shvartsmans, collectively, as tenants by the entirety. "A tenancy by the entirety is a type of concurrent ownership in real property that is unique to married persons." *Tkachik v Mandeville*, 487 Mich 38, 46; 790 NW2d 260 (2010). A "defining incident of this tenancy under Michigan law is that one tenant by the entirety has no interest separable from that of the other and has nothing to convey or mortgage or to which he alone can attach a lien." *Id*. (internal citation and quotation marks omitted). Stated differently, the consequence of a tenancy by the entirety "is that neither the husband nor the wife can dispose of the property without the assent of the other." *Licavoli v Licavoli*, 292 Mich App 450, 454; 807 NW2d 914 (2011) (internal citation and quotation marks omitted). Indeed, under MCL 557.71, "[a] husband and wife shall be equally entitled . . . to the control and management of real or personal property held by them as tenants by the entirety."

---

[3] At the time this Court considered the statute in *TRJ & E Props*, it was codified as MCL 211.9o(7)(b). The statute was amended effective May 3, 2018, which added subsection (5), and resulted in the renumbering of the following subsections. The language of the relevant statutory subsection, however, was not changed. 2018 PA 132.

Consequently, as a matter of law, when the Shvartsmans owned the subject property, Oleg did not have "control" over it; rather, he and Elizabeth shared control. In the simplest terms, the Shvartsmans collectively and inseparably controlled the alleged entity that owned the subject property before the transfer, and Oleg solely controlled the entity that owned the subject property after the transfer. Thus, the transfer was not between "commonly controlled" entities and therefore, MCL 211.27a(7)(m) does not apply.

## III. CONCLUSION

For this reason, we conclude that the tribunal properly denied petitioner's challenge to respondent's uncapping of the property taxes on the property located at 33872 York Ridge, Farmington Hills. We decline to address whether the Shvartsmans, as a married couple, could be considered a "legal entity" under MCL 211.27a(7)(m) as our resolution of that issue is not necessary to decide this case. Additionally, we decline to address petitioner's arguments that the tribunal improperly reassigned the case to Judge Marmon on reconsideration and improperly considered evidence respondent failed to file timely under Tax Tribunal Rule 287(1), R 792.10287. Petitioner failed to preserve these issues by raising them before the tribunal and any analysis of these issues would not affect our decision on the ultimate issue before us: the application of MCL 211.27a(7)(m).[4] See *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 561; 912 NW2d 593 (2018) (noting that this Court need not review issues not properly raised before the tribunal).

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[4] Notably our analysis contemplates only undisputed facts and, even if the case was improperly reassigned, we would still conclude that MCL 211.27a(7)(m) does not apply on the basis of those undisputed facts, leaving no relief for petitioner.